IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| GENE COGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:08-cv-262-TMH |
| | ) | [WO] |
| JIMMY ABBETT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are Defendant's *Motion to Dismiss Plaintiff's Complaint* (Doc. # 8) and Plaintiff's "Response" (Doc. # 13).[1]  Plaintiff has also filed a motion challenging the ability of the undersigned to enter orders in this case.  *See* Doc. # 21.

### I.  PARTIES

Plaintiff, Gene Coggins ("Coggins" or "Plaintiff"), is a resident of Lanett, Alabama.  Coggins is a *pro se* litigant with a long history of filing in this Court frivolous lawsuits and lawsuits over which this Court lacks subject matter jurisdiction.[2]  Defendant Sheriff Jimmy

---

[1]  The document was filed as a Motion to Deny the Motion to Dismiss as Sent by Defendant, but a review of the document shows that it responds to the motion to dismiss, so the Court construed it as such.  *See* Doc. # 15.

[2]  Including this case, it appears that Coggins has filed thirty-four lawsuits in this Court since 1992.  All but seven of those suits have been filed in the past five years.  Thirteen of the cases have been filed in the past four months.  Many of his cases have already been dismissed.  In many of the cases Coggins filed in this Court, he was suing to raise his dissatisfaction with the actions of various judicial officers from certain state or municipal courts.

Abbett ("Sheriff Abbett" or "Defendant") is the Sheriff of Tallapoosa County, Alabama.

## II.   JURISDICTION

Jurisdiction has been challenged by Sheriff Abbett's Motion to Dismiss.  Therefore, the question of subject matter jurisdiction will be addressed in detail below.

## III.   NATURE OF CASE

On April 7, 2008, Coggins initiated this action by filing a Complaint and several motions.  The Complaint named Sheriff Abbett as the sole defendant in this case.  *See* Doc. # 1.  Coggins alleges Sheriff Abbett destroyed certain constitutional rights.  The gist of these allegations - as best can be discerned - is a 42 U.S.C. § 1983 complaint.[3]

The underlying factual predicate for this Complaint is quite difficult to discern from the allegations of the Complaint.[4]  Coggins' nephew Mike Coggins has allegedly been breaking into, stealing, and damaging Coggins' property.  *See* Doc. # 1 at ¶¶ 1 & 6.  It appears from the allegations of the Complaint that after Coggins' brother died, his mother adopted two of the brother's children: Mike Coggins and Dianne Harrelson.  *Id.* at ¶ 6.  Thus, according

---

[3]  Although Coggins does not specifically invoke 42 U.S.C. § 1983 in his Complaint, the Court assumes that his claims arise under that statute.  He seeks a remedy for alleged violations of his rights under the Constitution, which violations were allegedly caused by a governmental official.  The law does not recognize implied causes of action under the United States Constitution.  42 U.S.C. § 1983 is the federal statue providing a cause of action for these types of claims in instances where a plaintiff can satisfy its requirement and where applicable bodies of law governing various types of immunities are not implicated.

[4]  The Court relies primarily on the allegations of the Complaint (Doc. # 1), but it has also considered the arguments Coggins advanced in his opposition to the Sheriff Abbett's motion to dismiss.  *See* Doc. # 13.

to the allegations of the Complaint, after the adoption Mike Coggins would have been both Coggins' nephew and his adopted brother.  Coggins further alleges that prior to his mother's death she had given him some land which now has a house on it.[5]  *Id.*  It appears that she later made out a will which left her estate, possibly including this land, to someone other than Coggins or to Coggins and his mother's adopted children jointly.  *Id.*  The Complaint is not entirely clear on this point.  In any event, it also appears from the allegations of the Complaint that Coggins has been involved in a variety of disputes over the property with Mike Coggins some of which seem to have resulted in criminal charges being brought against Coggins when he attempted to protect what he considers to be his exclusive property.  *Id.* at ¶¶ 1-7.  It also appears from the allegations of the Complaint that Coggins litigated his dispute with Mike Coggins over the ownership of the property in an Alabama court, but that the litigation did not terminate in Coggins' favor.  *Id.*  Furthermore, it is very evident that Coggins is quite frustrated with the response of various local law enforcement bodies and courts to his claims to the property.  *Id.*

Many of the allegations in the Complaint have little or nothing to do with any allegedly unconstitutional action by Sheriff Abbett.  At times in the Complaint, Coggins appears to be attempting to litigate in this suit his previously unsuccessful claim to exclusive title in the property he alleges his mother gave to him.  *See* Doc. # 1 at ¶ 7.  Perhaps these allegations are

---

[5]  Although it is difficult to be sure, it appears that Coggins may have constructed the house on this property and allowed his mother to live there until her death.  He alleges that the utilities are in his name and that he has paid the taxes on the property.

intended merely to provide background for Coggins' claims against Sheriff Abbett.

Coggins' first alleged constitutional violation is that "the Sheriff Department failed to protect private citizens from illegal breaking in stealing, and damaging private property. Their negligence placed the protection upon the owner. The Constitution of the United States gives every citizen the right to bear arms and use restrained force when necessary." Doc. # 1 at ¶ 1. Coggins further alleges that Sheriff Abbett refused to serve warrants on Mike Coggins when Coggins swears out complaints about Mike Coggins damaging what he claims is his property or stealing from him. Doc. # 1 at ¶ 6. According to Coggins, Sheriff Abbett's failure act against Mike Coggins amounts to protecting him. *Id.* Furthermore, Coggins asserts that by his refusal to try to stop Mike Coggins,[6] Sheriff Abbett becomes guilty of grand theft, trespassing, destruction of private property, fraud, breaking his oath of office, failing to uphold the Constitution of the United States, and perjury. *Id.* The Court will refer to this claim as Claim 1.

In what the Court will refer to as Claim 2, Coggins complains that members of the City of Jackson's Gap Police Department had Sheriff Abbett place him in jail without an indictment by a Grand Jury; locked Coggins up before he was served with a warrant; and held

_____

[6] In opposition to the motion to dismiss, Coggins further contends that Sheriff Abbett has "created all of these problems by telling and giving my nephew Mike Coggins permission to trespass upon private property and to break in the house destroying [Coggins'] locks and even kick the doors down if [Coggins] locked him out." Doc. # 13 at p. 6. Coggins contends that Sheriff Abbett is friends with Mike Coggins and that he refuses to serve eviction notices or warrants on Mike Coggins. *Id.* at p. 7.

him for twelve hours.  *See* Doc. # 1 at ¶ 2.  Coggins further alleges that "the police office [sic]" came in and made out the warrant" while he was in jail.  *Id.*  With respect to this claim, the sole conduct chargeable to Sheriff Abbett is placing Coggins in jail and holding him.  It is not alleged that Sheriff Abbett was responsible for swearing out the warrant against Coggins.

In what the Court will refer to as Claim 3, Coggins complains that he was charged with domestic violence and later acquitted because the person he injured was found to have not lived in the same dwelling as Coggins.  *See* Doc. # 1 at ¶ 3.  Because of this finding, Coggins contends that the charge was "illegal" from the beginning.  *Id.*  Coggins does not provide the date these charges were brought against him.  Coggins does not allege that Sheriff Abbett had any role in bringing the domestic violence charges against him.  Indeed, the allegations concerning this alleged violation make no mention whatsoever of Sheriff Abbett.

In what the Court will refer to as Claim 4, Coggins alleges that he was charged with menacing, which he contends is a misdemeanor under the Alabama Criminal Code.  *See* Doc. # 1 at ¶ 4.[7]  Coggins reasons that because this offense was a misdemeanor for which he could not be sentenced to jail time if convicted, it was illegal for anyone to arrest him for this offense and place him in jail on the charges.  *Id.*  Coggins does not allege what if any

---

[7]  The Complaint actually contains two paragraphs bearing the number four.  The Court, here, is referring to the second of those paragraphs which appears on page 3 of the Complaint.  The first paragraph numbered 4 does not contain any allegations of relevant to any claim against Sheriff Abbett.

involvement Sheriff Abbett had in this arrest or in placing him in jail while the menacing

charges were pending.  Coggins does not allege when this occurred.

In what the Court will refer to as Claim 5, Coggins further complains that he attempted

to appeal his conviction on this charge to the Circuit Court of Tallapoosa County, Alabama

for a jury trial.  *Id.* at ¶ 4A.  His son was in an accident and in the hospital around the time he

was due to appear in court regarding his appeal.  *Id.*  Coggins alleges that he filed a motion

seeking a continuance of his court appearance on the grounds of a medical emergency, but the

court ignored his request and dismissed his appeal.  *Id.* at ¶ 4B.  Coggins does not allege any

involvement by Sheriff Abbett in the dismissal of his appeal.  His allegations that the Circuit

Court Judge denied him his constitutional right to due process by dismissing the appeal have

no place in this lawsuit against Sheriff Abbett.

## IV.  PLAINTIFF'S MOTION TO DISMISS ORDERS

On May 9, 2008, Coggins filed a "Motion to Dismiss the Orders Filed by Terry F.

Moorer."  *See* Doc. # 19.  In the motion, Coggins averred it was illegal for Magistrate Judge

Moorer to enter any orders in this case.  The Court denied Coggins motion on May 14, 2008.

*See* Doc. # 20.

On May 21, 2008, Coggins filed a "Motion to Dismiss Orders by Truman M. Hobbs."

*See* Doc. # 21.  In the motion, Coggins contends that the undersigned judge is directly or by

association involved in his prior lawsuit against this Court, nearly all of its judges, and its

clerk.  Consequently, Coggins believes that any action by any judge of this Court is illegal.

Page 6 of  25

Moreover, Coggins focuses on a perceived default and default judgment.[8]  As previously explained in the Orders entered on May 6, 2008 and May 14, 2008, Coggins is not entitled to the relief he seeks in his motion.  *See* Doc. # 17 & Doc. # 20.  Accordingly, denial of Coggins' motion to dismiss (Doc. # 21) is appropriate.

## V. DEFENDANT'S MOTION TO DISMISS

In his pending Motion to Dismiss, Sheriff Abbett asserts that Coggins' claims fail for the following reasons:

(1)     Plaintiff's claims do not satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure;

(2)     Plaintiff fails to establish federal subject matter jurisdiction and has not alleged diversity jurisdiction, thus the claims should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure;

(3)     Plaintiff's claims are precluded by *res judicata* and/or collateral estoppel;

(4)     Plaintiff's claims fail to state claim for which relief may be granted and should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure;

(5)     Sheriff Abbett cannot be held liable through *respondeat superior*;

(6)     Sheriff Abbett would be entitled to sovereign immunity for claims against him

---

[8]     Summons was issued to Sheriff Abbett on May 5, 2008; however, prior to the official summons even being issued, defendants received unofficial notice of the lawsuit. Thus, the Motion to Dismiss was filed on April 28, 2008.  The issue of default and default judgment is not at issue.

in his official capacity;

(7)     Sheriff Abbett would be entitled to qualified immunity for claims against him

in his individual capacity;

(8)     Coggins claims are barred by the *Rooker-Feldman* doctrine as they belong to

the state appellate system;

(9)     Coggins' claims are barred by statute of limitations; and

(10)    Coggins is not entitled to punitive damages.

*See* Doc. # 9.

Coggins filed his response brief to Sheriff Abbett's motion to dismiss on May 2, 2008.

*See* Doc. # 13.  His response includes only his prior allegations, blanket conclusory "legal

assertions," and general attacks against the judicial system.  Moreover, Coggins again focuses

on what he contends constituted ground for a default and default judgment.[9]  Unfortunately,

Coggins has done little to refute Sheriff Abbett's asserted grounds for dismissal.

## VI.  STANDARDS OF REVIEW

A Rule 12(b)(1) motion directly challenges the district court's subject matter

jurisdiction.  *Gilmore v. Day*, 125 F. Supp. 2d 468, 470 (M.D. Ala. 2000).  A motion to

dismiss for lack of subject matter jurisdiction may occur either facially or factually.  *Morrison*

---

[9]  Summons was issued to Sheriff Abbett on May 5, 2008; however, prior to the official summons even being issued, defendants received unofficial notice of the lawsuit. Thus, Sheriff Abbett's Motion to Dismiss was filed on April 28, 2008. Prior to the issuance of the Summons and Complaint in this action, Plaintiff sought entry of default and a default judgment.  The Court denied these requests.  *See* Doc. # 17.

*v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).  A "facial attack" is based solely on the pleadings and requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction.  *Id.*; *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  Further, for the purposes of the court's analysis, the allegations in the plaintiff's complaint are taken as true.  *Id.*  On the other hand, a "factual attack" challenges "subject matter jurisdiction in fact, irrespective of the pleadings."  *Morrison*, 323 F.3d at 925.  The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction.  *Gilmore*, 125 F. Supp. 2d at 471 (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  Prior to the Supreme Court's recent decision in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), a motion to dismiss could only be granted if a plaintiff could prove "no set of facts . . . which would entitle him to relief."  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986).  Now, in order to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 127 S. Ct. at 1974.  While the factual allegations of a complaint need not be detailed, a plaintiff must nevertheless "provide the 'grounds' of his 'entitlement to relief' and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1965.  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above a speculative level on the assumption that the allegations in the complaint are true."  *Id.*  It is not sufficient

that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 1968 (internal quotation and alteration omitted).  In considering a defendant's motion to dismiss, a district court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the plaintiff.  *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). *Accord, Nelson v. Campbell*, 541 U.S. 637, 640 (2004) (where a court is considering dismissal of a complaint at the pleading stage, it must assume the allegations of the complaint are true).

"Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Id.*  In other words, in deciding a 12(b)(6) motion to dismiss, the court will accept the petitioner's allegations as true.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citing *Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997)).   However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)); *see also*

*Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)[10]

(conclusory allegations and unwarranted deductions of fact are not admitted as true).

All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure.

Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does

not have "license to serve as *de facto* counsel for a party. . .or to rewrite an otherwise deficient

pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*,

132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

## VII.   DISCUSSION

### A.     *Rooker-Feldman*

Defendant avers Plaintiff inadequately explains how the federal district court has

subject matter jurisdiction. *See* Doc. # 8 at ¶¶ 2-3; Doc. # 9 at § I.  When there is no

allegation of diversity jurisdiction made in the Complaint, the Court must have original

jurisdiction over the case.  Federal district courts have "original jurisdiction of all civil actions

arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; *see*

*also City of Huntsville v. City of Madison*, 24 F.3d 169, 171 (11th Cir. 1994) (citing statute).

Federal question jurisdiction may be based on a civil action alleging a violation of the United

States Constitution or a federal cause of action established by a Congressionally-created

expressed or implied private remedy for violations of a federal statute and in limited

---

[10] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

circumstances, federal question jurisdiction may also be available if a substantial, disputed question of federal law is a necessary element of a state cause of action. *City of Huntsville*, 24 F.3d at 171-72 (citations omitted). "[O]nce a court determines that there has been no grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000); *accord Barnett v. Bailey*, 956 F.2d 1036, 1039-41 (11th Cir. 1992) (holding that a court is required to examine its jurisdiction over an action at any time and dismiss an action *sua sponte* for lack of subject matter jurisdiction if jurisdiction is not found.).

The *Rooker-Feldman* doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476-82 (1983). The Eleventh Circuit has described the *Rooker-Feldman* doctrine as follows:

> The Rooker-Feldman doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts. The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are "inextricably intertwined" with a state court judgment. A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.

*Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001) (citing *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000)).

Despite his numerous arguments to the contrary, Coggins' claims that Sheriff Abbett

refused to protect his interest in his mother's estate in various ways (Claim 1), denied
Coggins' right to a jury trial (Claim 5), improperly charged him with domestic violence and
menacing (Claims 3 & 4), and deprived him of proper trial and appellate proceedings (Claim
5) are prohibited by the *Rooker-Feldman* doctrine.  These claims request federal court review
of a state-court judgment in violation of the *Rooker-Feldman* doctrine.  Further, neither the
United States Constitution, nor any act of Congress authorizes this Court to entertain these
causes of action.  Thus, dismissal of these claims is appropriate to the extent that Coggins
seeks federal court review of state-court judgments.

## B.  Eleventh Amendment Immunity

As previously stated, the sole defendant in this case is Sheriff Abbett.  Coggins has
failed to specify whether he is suing Sheriff Abbett in his official capacity or in his individual
capacity or in both capacities.  The Complaint seeks only monetary damages.[11]  For the
reasons stated below, the Eleventh Amendment bars all claims against Sheriff Abbett in his
official capacity.

A suit against a government official in his official capacity is considered a suit against
the official's office itself.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  When that
office is an arm of the state government, the Eleventh Amendment "protects the sovereignty
of the state by prohibiting suits when recovery would be paid from state funds."[12] *Robinson*

---

[11]  A careful review of the Complaint reveals no other requests for relief such as
prospective injunctive relief.

[12] There is no indication that Alabama has waived its sovereign immunity.

*v. Georgia Dep't of Transp.*, 966 F.2d 637, 638-39 (11th Cir. 1992); *see Edelman v. Jordan*, 415 U.S. 651 (1976) (defining scope of sovereign immunity under the Eleventh Amendment). Indeed, the Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI; *see also Toth v City of Dothan, Ala.*, 953 F. Supp. 1502, 1506 (M.D. Ala. 1996) (citing Eleventh Amendment). Specifically, an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens unless Congress has abrogated immunity or the state has waived its immunity. *Id*. (citations omitted). Congress has not abrogated Eleventh Amendment immunity for cases brought pursuant to 42 U.S.C. § 1983, nor has Alabama waived its immunity in this action. *Id*. (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990)). Moreover, State officials "acting in their official capacities" are outside the class of "persons" subject to liability under § 1983. *Hafer v. Melo*, 502 U.S. 21, 22-23 (1991) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)); *see also Carr*, 916 F.2d at 1525 n.3 (citing *Will*); *Toth*, 953 F. Supp. at 1507 (citing *Hafner* and *Will*).

It is well-settled that under Alabama law, sheriffs and their deputies are state, and not county, officers. The Alabama Constitution includes sheriffs among the enumerated officers of the state executive department. Ala Const. Art. V, § 111 ("The executive department shall consist of a governor, lieutenant governor, attorney-general..., and a sheriff for each county.").

Numerous courts have held that Alabama sheriffs are executive officers of the state, and, that as a result, suits against a sheriff are suits against the state. *Parker v. Amerson*, 519 So. 2d 442, 442-43 (Ala.1987) ("A sheriff is an executive officer of the State of Alabama ...."); *see also McMillan v. Monroe County, Ala.*, 520 U.S. 781, 789 (1997) (holding that, based on an analysis of Alabama law, sheriffs are state officers and suits against them in their official capacity are suits against the state).   This immunity also  extends to the sheriff's deputies. *Carr*, 916 F.2d at 1526.  Accordingly, this Court must consider a suit against Sheriff Abbett in his official capacity as Sheriff of Tallapoosa County, Alabama, as a suit against the State of Alabama.  Because the Eleventh Amendment bars suits against the state in federal court, in the absence of consent, this Court has no jurisdiction to hear any of Coggins' claims for monetary damages against Sheriff Abbett in his official capacity.  For this reason, all claims against Sheriff Abbett in his official capacity are due to be dismissed.

**C.     Coggins' Claims Against Sheriff Abbett In His Individual Capacity**

**1. Legal Paradigm**

While the Eleventh Amendment shields state officers from damage suits in their official capacities, these officials are individually amenable to suit under 42 U.S.C. § 1983 for violations of the United States Constitution and federal law. *See Graham*, 473 U.S. at 165-67.  However, a government official sued in his individual capacity under § 1983 may assert qualified immunity as an affirmative defense if he was performing a discretionary function. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).  "Once the

official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." *Id*. If the plaintiff fails to furnish sufficient factual allegations at this stage, the defendant officer is entitled to judgment. *See Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001). In this case, there is no dispute as to whether Sheriff Abbett was engaged in discretionary functions.

In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court delineated a two-step analysis for determining whether an officer who was engaged in a discretionary function is eligible for qualified immunity. The initial inquiry focuses on whether the plaintiff's allegations, if considered true, show that the officer violated a constitutional right. *Id*. The absence of a constitutional violation ends the inquiry. *Id*. However, where a court does find that an officer acted in an unconstitutional manner, the analysis turns to whether the right in question was clearly established so that the officer had fair warning that his conduct was constitutionally prohibited. *Id*.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation and internal quotations omitted). This standard does not require a prior court decision to have declared the precise set of facts presently alleged unlawful, "but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 438 U.S. 635, 640 (1987). "The

salient question. . . is whether the state of the law . . . gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope*, 536 U.S. at 741.

The Eleventh Circuit has further refined the analysis of when the law is clearly established. It has observed that "fair and clear" notice may be given by (1) the "obvious clarity" of the pertinent federal statute or constitutional provision, such that qualified immunity may be overcome in the "total absence of case law," (2) the judicial determination that certain conduct has been defined as unlawful without regard to particular facts, and (3) holdings in specific cases that are tied to certain facts. *Vinyard v. Wilson*, 311 F.3d 1340, 1350-51(11th Cir. 2002) (emphasis removed). Only the decisions of the Supreme Court, the Eleventh Circuit, or the highest court in the state in which the case arose provide the case law capable of clearly establishing the boundaries of rights in the qualified immunity analysis. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003).

### 2.    Failure to Protect Property / Failure to Arrest Mike Coggins (Claim 1)

To begin with Claim 1 is problematic because it is predicated on an alleged failure of members of the Sheriff's Department to act. As Sheriff Abbett argues, he cannot be held liable pursuant to 42 U.S.C. § 1983 on a theory of *respondeat superior*. *See, e.g., Monell v. Department of Social Services,* 436 U.S. 658 (1978). This opinion therefore must focus on the viability of Coggins' claims against Sheriff Abbett for his own conduct, not the conduct of his deputies or other unnamed and unknown members of the Sheriff's Department. To the extent that Coggins' Complaint seeks to make Sheriff Abbett liable for the acts of any other

member of the Sheriff's Department, it is due to be dismissed.

The next legal deficiency in Claim 1 is that it predicates liability on an allegation that Sheriff Abbett's conduct amounted to a negligent deprivation of Coggins' rights to Due Process. Coggins specifically alleges that he was harmed by the "negligence" of the Sheriff's Department, which as explained above is limited in this case to the "negligence" of Sheriff Abbett. Negligence deprivation of Due Process right does not give rise to liability under § 1983. *See, e.g., Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) ("the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care."); *Porter v. White*, 483 F.3d 1294, 1307-08 (11th Cir. 2007) (mere negligence or inadvertence on the part of a law enforcement official does not amount to a "deprivation" in the constitutional sense and cannot provide a basis for liability in a § 1983 action). To the extent that Claim 1 is predicated solely on allegations of negligent conduct by Sheriff Abbett, it is due to be dismissed.

To the extent that Count 1 could be construed to allege that Sheriff Abbett himself intentionally violated Coggins' rights by failing to protect Coggins' property from his nephew, Mike Coggins, or any other private citizen, the Court must next consider whether such an allegation states a viable constitutional claim. Sheriff Abbett argues that it does not. The Court agrees. "[T]he Due Process Clauses generally confer no affirmative right to

governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 196 (1989).  In other words, the Due Process Clause acts as "a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id*. at 195.   There is no requirement that the government protect its citizens against invasion by private actors.  *Id*.; *see also Wooten v. Campbell*, 49 F.3d 696 (11th Cir. 1995) (citing to *DeShaney* and holding there is no constitutional right to protection from a private party).  Thus, Sheriff Abbett was under no constitutional duty to protect Coggins' property from encroachment by Mike Coggins or any other private individual.  Because Coggins' allegations about Sheriff Abbett's failure to protect his property, even if considered true, fail to show that Sheriff Abbett violated a constitutional right, dismissal of Claim 1 is required by law.

To the extent Coggins asserts Sheriff Abbett failed to charge, arrest, prosecute, or otherwise respond to his complaints against certain individuals, the claim fails to rise to the level of a constitutional violation.  A "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 767 n.13 (2005) (quoting *Linda R. v. Richard D.*, 410 U.S. 614, 619 (1973)); *Leeke v. Timmerman*, 454 U.S. 83, 85-86 (1981); *see also Burt v. Holcombe*, Civ. Act. No. 00-0452RVL, 2000 WL 1848082, at *2-3 (S.D. Ala. 2000) (claim that police chief and detective failed to respond to plaintiff's inquiries and arrest individuals responsible for stealing checks

was not of constitutional magnitude).  Moreover, the Court is not persuaded that Coggins can use § 1983 to seek a remedy for his theory that Sheriff Abbett, through his inaction, is guilty of a variety of state law crimes or a breach of his oath of office.  This statute simply provides no remedy for such claims.  As the Court finds no violation of a constitutional right, Claim 1 is without legal merit and should be dismissed.

### 2.  Fourth Amendment / Malicious Prosecution Claim (Claims 2, 3, and 4)

Abbett contends that Coggins has failed to adequately alleges a claim pursuant to 42 U.S.C. § 1983 for a violation of his right under the Fourth Amendment to be free from malicious prosecution.  The Eleventh Circuit Court of Appeals has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983.  *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (collecting cases recognizing this).  "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures."  *Kingsland v. City of Miami,* 382 F.3d 1220, 1234 (11th Cir. 2004).  *Accord*, *Wood*, 323 F.3d at 881.  The elements of malicious prosecution under Alabama common law are: "1) a criminal prosecution instituted or continued by the present defendant; (2) with malice *and* without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."  *Id.* at 882 (citing *Delchamps, Inc. v. Bryant*, 738 So .2d 824, 831-32 (Ala. 1999)).

The allegations against Sheriff Abbett in Claim 2, Claim 3, and Claim 4 are best characterized as malicious prosecution.  That having been said, Coggins fails to allege sufficient facts on which to base such a claim against Sheriff Abbett.  It is difficult to read the Complaint as even to suggest that Sheriff Abbett, himself, caused Coggins to be maliciously prosecuted.  Moreover, the Complaint is devoid of any allegation and of any facts that plausibly suggest the required elements of such a claim, including that Sheriff Abbett acted with malice and without probable cause.  Even if Coggins' allegations could be read to suggest that Sheriff Abbett acted with malice, that fact does not plausibly support a lack of probable cause.  As the United States Supreme Court long ago explained with regard to a malicious prosecution claim,

> [m]alice alone, however, is not sufficient to sustain the action, because a person actuated by the plainest malice may nevertheless prefer a well-founded accusation, and have a justifiable reason for the prosecution of the charge. Want of reasonable and probable cause is as much an element in the action for a malicious criminal prosecution as the evil motive which prompted the prosecutor to make the accusation; and though the averment is a negative one in its form and character, it is nevertheless a material element of the action, and must be proved by the plaintiff by some affirmative evidence, unless the defendant dispenses with such proof by pleading singly the truth of the several facts involved in the charge.  Either of these allegations may be proved by circumstances, and it is unquestionably true that want of probable cause is evidence of malice, but it is not the same thing; and unless it is shown that both concurred in the prosecution, or that the one was combined with the other in making or instigating the charge, the plaintiff is not entitled to recover in an action of this description.  According, it was held in Forshay v. Ferguson, 4 Den., 619, that even proof of express malice was not enough without showing also the want of probable cause; and the court go on to say, that however innocent the plaintiff may have been of the crime laid to his charge, it is enough for the defendant to show that he had reasonable grounds for believing him guilty at the time the charge was made....It is true as before remarked, that want

of probable cause is evidence of malice for the consideration of the jury; but the converse of the proposition cannot be sustained.

*Wheeler v. Nesbitt*, 65 U.S. 544, 549-51 (1860).   *Accord, Stacey v. Emery*, 97 U.S. 642 (1878); *Delchamps, Inc. v. Larry*, 613 So. 2d 1235 (Ala. 1992) ("Malice is an inference of fact and may be inferred from the lack of probable cause *or from mere wantonness or carelessness*.") (emphasis added).   The Court agrees that the Complaint fails to identify facts that are suggestive enough to plausibly render the actions of Sheriff Abbett without probable cause.   Coggins' failure to support this claim by adequate factual allegations in support of all requisite elements constitutes failure to state a claim.   Accordingly, the motion to dismiss the malicious prosecution claims contained in Claims 2, 3, and 4 is due to be GRANTED.[13]

### 3.  Claim 5 - Alleged Denial of Due Process

In Claim 5, Coggins complains of the failure of a state circuit court judge to continue a hearing on an appeal.   Apparently, the judge rejected Coggins' plea for a different hearing date and dismissed the action.   This claim is utterly devoid of any allegation against Sheriff Abbett.   There is absolutely no basis for holding Sheriff Abbett legally accountable to the

---

[13]  To the extent that Coggins' claims could be characterized as a § 1983 action for false arrest, they are similarly deficient due to the failure to allege that Sheriff Abbett arrested Coggins without probable cause.   The existence of probable cause creates "an absolute bar to a section 1983 action for false arrest."  *Marx v. Gumbinner,* 905 F.2d 1503, 1506 (11th Cir. 1990).   Probable cause to arrest exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed ... an offense."  *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting *Williamson v. Mills,* 65 F.3d 155, 158 (11th Cir. 1995)) (internal quotation marks omitted).

actions of the judge.  This claim fails to state a claim for which relief can be granted as to Sheriff Abbett and it must be dismissed.

## VIII.  PRIVILEGE OF FILING AN *IN FORMA PAUPERIS* ACTION IN FEDERAL COURT

Since May 2007, Plaintiff Gene Coggins has filed twenty-three (23) separate lawsuits[14] in this Court pursuant to 28 U.S.C. § 1915 charging a variety of defendants with spurious claims most frequently seen in state court litigation.  Apparently undeterred by the notice provided in each case regarding the limited jurisdiction of federal courts, the glaring deficiencies of his lawsuits, and penalties for abusing the privilege of proceeding without paying filing fees and costs, Coggins filed this and eleven other actions on April 7, 2008.  As of the date of this opinion, the Court is also aware of at least two subsequently filed actions by Coggins.

Coggins is advised, as this Court has consistently reminded similarly situated *pro se* litigants, the privilege of filing a federal court lawsuit without prepayment of filing fees properly acknowledges a "right of access to courts" which is constitutionally secured for all American citizens. The privilege is subject, however, to valid and reasonable limitations designed not only to conserve limited judicial resources, but also to prevent abuse by unlearned laymen who may be tempted to seize the privilege as a license for limitless or mis-guided forays into federal court with bootless claims and grievances unresolved in other

---

[14]      In total, since the early nineties, Coggins has filed thirty-four separate lawsuits, but since 2007 his numbers have picked up considerably.

forums or for which there simply is no remedy.  Frivolous or malicious lawsuits against any defendants – corporate, public, institutional, or individual – automatically result in inconveniences, burdens, and costs, associated with defense even to the extent of securing dismissal from the action.

**This Court also deems it appropriate now to advise Coggins that pro se litigants are also bound to honor Rule 11 of the Federal Rules of Civil Procedure**, which provides in pertinent part at Rule 11(b):

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1)    it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2)    the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3)    the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b).  A plaintiff may incur a substantial penalty for non-compliance with this rule by filing a federal court lawsuit without first conducting "an inquiry reasonable under the circumstances" in order to inform his "knowledge, information, and belief" about the merits of the lawsuit.  Rule 11(c)(2) provides:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed. R. Civ. P. 11(c)(2).

## IX. CONCLUSION

For the reasons set forth above, it is hereby ORDERED as follows:

1. It is hereby **ORDERED** that the referral of this case to the Magistrate Judge is **WITHDRAWN**.

2. Plaintiff's Motion to Dismiss the [sic] Filed On, 05-14-08 By; Truman M. Hobbs (Doc. # 21) is DENIED.

3. The Motion for Sanctions under Fed. R. Civ. P. 11 (Doc. # 10) filed by Defendant Sheriff Abbett is DENIED. Plaintiff is cautioned, however, that the filing of further frivolous lawsuits in this Court could result in the imposition of monetary sanctions against him.

4. Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. # 8) is GRANTED and all of Plaintiff's claims in this action are DISMISSED WITH PREJUDICE.

5. An appropriate final judgment will be entered consistent with this Memorandum Opinion and Order.

DONE this the 18th day of June, 2008.

_____/s/ Truman M. Hobbs_____
SENIOR UNITED STATES DISTRICT JUDGE